(C.D. 2431)

MORRIS SHOENTHAL, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided on rehearing [Abstract 65532] February 3, 1964)

*Brooks & Brooks* (*Thomas J. McKenna* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: This case involves the importation of certain ramie and artificial silk hoods, which were assessed with duty at the rate of 25 per centum ad valorem and $1.50 per dozen under paragraph 1504 (b) (4) of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, which provides as follows:

Hats, bonnets, and hoods, composed wholly or in chief value of straw, chip, paper, grass, palm leaf, willow, osier, rattan, real horsehair, cuba bark, ramie, or manila hemp, whether wholly or partly manufactured:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Sewed, whether or not blocked, trimmed, bleached, dyed, colored, or stained.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Not-wholly or in chief value of straw.

It is the contention of plaintiff herein that said hoods are not sewed and are, therefore, subject to duty at the rate of 23 cents per dozen and 11½ per centum ad valorem under paragraph 1504(b)(2), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, which provides as follows:

Hats, bonnets, and hoods, composed wholly or in chief value of straw, chip, paper, grass, palm leaf, willow, osier, rattan, real horsehair, cuba bark, ramie, or manila hemp, whether wholly or partly manufactured:

Not blocked or trimmed:

Composed wholly or in chief value of straw or ramie:

\* \* \* \* \* \* \*

Bleached, dyed, colored, or stained.

The record in the instant case consists of a stipulation of fact entered into by and between counsel for the respective parties and provides, so far as is pertinent herein, as follows:

1. That the merchandise covered by the above-mentioned protest consists of hoods in chief value of ramie assessed with duty under Paragraph 1504(b)(4) of the Tariff Act of 1930, as modified by T.D. 52739, as *sewed* hoods, whether or not blocked, trimmed, bleached, dyed, colored, or stained, not wholly or in chief value of straw, at the rate of $1.50 per dozen and 25 per centum ad valorem;

2. That the hood attached hereto is representative of the item here in issue, numbered 9080 on the invoice, and that said item is offered in evidence, without objection by either party litigant, with the request that it be marked exhibit 1;

2A. That the hood marked Exhibit 1 is not blocked or trimmed but is dyed or colored;

3. That Commission No. 1441 issued by this Court to take the deposition of one Carlo Fantacci, Florence, Italy, is offered in evidence, without objection by either party litigant, with the request that it be marked exhibit 2;

4. That the attached typewritten list of interrogatories, put to Carlo Fantacci under authority of the Commission referred to in paragraph marked "3", *supra*, and the answers given thereto by the said Fantacci, arranged seriatim, is offered in evidence without objection by either party litigant, with the request that it be marked exhibit 2A;

4A. That the souffle material mentioned in the answers to interrogatories "14" and "15" consists wholly of artificial silk and that there is no other artificial silk in exhibit 1. [Italics quoted.]

As indicated, *supra*, the testimony of one Carlo Fantacci, taken by means of commission No. 1441, duly issued by this court, was received in evidence. Mr. Fantacci, a partner in the manufacturing firm, testified that his firm manufactures straw hats and braids, women's and men's hats, and knitted gloves; that the merchandise involved herein was made by his firm and is composed of ramie, cellophane, and artificial silk; that, from 1956 to 1958, he had seen such hoods being manufactured approximately 300 times; that the hood'

are completely woven in one piece, without any sewing, and that the souffle material is punctured over the hoods after they have been completely woven; that these articles are known as hoods after the first process.

The sole question presented to the court for determination is whether or not the involved hoods are sewed. An examination of the sample, exhibit 1, bears out the statement of Mr. Fantacci that the hood is woven, apparently without any sewing. A further examination indicates that certain stitches appear to be made through the woven material which attaches the souffle. The leading case in this matter is *Amberg, Schwab & Co., Inc., et al.* v. *United States,* 64 Treas. Dec. 433, T.D. 46701. The court, in that case, after reviewing the various lexicographers on the definition of sew, stitch, and lace, made the following comment:

> After a careful consideration of all the definitions hereinbefore quoted of the words "sew" and "stitch", and their association together, it appears to us that a fair construction of the word "sew" would be that a needle, awl, or other tool must be used, and that the needle, awl, or other tool used must actually puncture or penetrate the fabric being sewn, as contradistinguished from lacing or looping the thread, twine, wire, or other flexible material being used, actually passing through each puncture or penetration made in the fabric being sewn, by the needle, awl, or other tool used. * * *

> \*     \*     \*     \*     \*     \*     \*

> Inasmuch as Congress is presumed to enact a statute according to the common understanding of the terms therein employed, and inasmuch as we are called upon to construe said paragraph 1504 according to the common understanding of the terms therein used, the following quotation from the Encyclopaedia Britannica [*sic*], fourteenth edition, volume 21, page 465 (published in 1929), we believe, strongly supports the construction we have given to said paragraph 1504:

>> VARIETIES OF STRAW HATS.—Straw hats comprise: (1) those made of plaits sewn in overlapping rows either by hand or machine, (2) those woven like a basket called hoods, (3) those, like the "Leghorn" which are made of plaits laid edge to edge. These last have, for fixing the rows of plaits together, a fine cord threaded through the loops resulting from each bend of the strand of the straw at the turn of the pattern, which when tightened interlocks the rows in such a manner as to conceal the cord entirely, forming, when finished, practically a flat surface, while the sewn hats, having each row overlapping the next with the stitch taken through, present a fuller and richer appearance. * * * All methods commence at the center of the top of the crown and the starting spiral or knot is termed the "button."

The *Amberg, Schwab & Co., Inc.,* case, *supra,* while it arrived at a fair construction of the word "sew," also set forth information indicating that, within the common understanding of the terms provided for in paragraph 1504 of the Tariff Act of 1930, there are three varieties of straw hats, i.e., sewn, woven, and hats like the "Leghorn," the latter being made of plaits laid edge to edge and having a fine cord passing through the loops. However, in view of the foregoing

definition of "sew," the process of manufacture of the leghorn hats does not involve sewing. The "Leghorn," accordingly, falls within the category of woven hats.

The foregoing information is supported by the following statements contained in the Summary of Tariff Information (1929):

### HATS, BONNETS, AND HOODS

Description and use.—Straw hats are divided into two general classes according-to process of manufacture: (1) Sewed braid hats, (2) woven hats, including Panamas, leghorns, Javas, etc. * * *

\*　　\*　　\*　　\*　　\*　　\*　　\*

Neither the English nor the Italian factories confine their business exclusively to men's sewed straw hats. Some of them also block and trim woven-hat bodies, such as Panamas; * * *.

The Summaries of Tariff Information (1948) also contains the following, which supports the position taken in the *Amberg, Schwab & Co., Inc.*, case, *supra:*

### HAT BODIES (EXCEPT HAT BODIES AND HARVEST HAT BODIES), OF STRAW, CHIP, PAPER, GRASS, WILLOW, OSIER, RATTAN, REAL HORSEHAIR, CUBA BARK, RAMIE, OR MANILA HEMP

(Par. 1504(b) (1) and (2))

### Comment

Hat bodies are partly finished hats, i.e. those which have not been blocked or trimmed. This summary covers men's and women's hat bodies (other than sewed hat bodies and harvest hat bodies) which are made of paper, straw, chip, grass, willow, osier, rattan, real horsehair, cuba bark, ramie, or manila hemp. These bodies are made into finished hats for summer wear which are frequently referred to collectively as "straw" hats. Paper hat bodies are partially made by machine but those of the other named materials are usually hand woven.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Table 3 shows imports of hat bodies by kinds with principal sources in 1939 and 1946. The large prewar imports of hat bodies made of straw (from cereal grasses) came in about equal quantities from China and Italy. Practically all of the imports from China consisted of woven hat bodies. Most of those from Italy were not true woven bodies, but were made from braid by a process of hand lacing known as remailling. They were, however, classified, for duty purposes, as woven hat bodies rather than as sewed hat bodies under paragraph 1504(b)(4). (T.D. 47812) The best known remailled hat is the leghorn imported from Italy.

\*　　\*　　\*　　\*　　\*　　\*　　\*

### SEWED HATS AND HAT BODIES (EXCEPT HARVEST HATS AND HAT BODIES), OF NATURAL FIBERS

(Par. 1504(b) (4))

During the latter part of the 1930's most of the women's hats were made from sewed bodies, whereas men's hats were more equally divided between sewed and woven bodies, although sewed bodies predominated. Recent data are not available but it is believed that the general division as to the type of body used has not been materially changed. In the choice between a woven body or a sewed body for men's hats, price probably is the more important factor, style being a secondary consideration. * * *

In view of the foregoing, we are of the opinion that the word "sewed," contained in paragraph 1504(b) of the Tariff Act of 1930, as modified, *supra*, relates to the manufacturing process of the hat, bonnet, or hood, *per se*, and does not include subsequent sewing of the souffle material. Exhibit 1 is a woven hood and, accordingly, falls within the purview of paragraph 1504(b)(2), as modified, *supra*, irrespective of the fact that the souffle material had been punctured, stitched, or sewn to the woven hat body. Accordingly, claim of plaintiff herein is sustained.

Judgment will be entered accordingly.